1
2
3
4                         UNITED STATES DISTRICT COURT
5                                DISTRICT OF NEVADA
6                                      * * *
7    NATIONSTAR MORTGAGE, LLC,                Case No. 2:15-CV-909 JCM (CWH)
8                           Plaintiff(s),                 ORDER
9          v.
10   ALEX BEREZOVSKY, et al.,
11                         Defendant(s).
12
13          Presently before the court is defendant/counterclaimant Alex Berezovsky's
14   ("Berezovsky") motion for summary judgment. (ECF No. 44). Plaintiff/counterdefendant
15   Nationstar Mortgage, LLC ("Nationstar") filed a response (ECF No. 55), to which Berezovsky
16   replied (ECF No. 61).
17          Also before the court is plaintiff Nationstar's motion for summary judgment. (ECF No.
18   46). Defendant Tanglewood Homeowners Association (the "HOA") filed a response (ECF No.
19   53), as did Berezovsky (ECF No. 54). No reply was filed, and the period to do so has since passed.
20          Also before the court is the HOA's motion for summary judgment. (ECF No. 48).
21   Berezovsky filed a joinder to the motion. (ECF No. 50) Nationstar filed a response (ECF No.
22   56), to which the HOA replied (ECF No. 62).
23   I.     Facts
24          This case involves a dispute over property that was subject to a homeowners'
25   association's superpriority lien for delinquent assessment fees. On December 29, 2005, Curtis
26   Barschdorf and Gayle Ann Barschdorf (the "borrowers") obtained a $230,800.00 loan from
27   Countrywide Bank, N.A. ("Countrywide") to purchase the property located at 6529 Hartwood
28   Road, Las Vegas, Nevada 89108 (the "property"). (ECF No. 1 at 3).

James C. Mahan
U.S. District Judge

1    The loan was secured by a first deed of trust encumbering the property, which was

2    recorded on November 22, 2006.  (ECF No. 46-1 at 2–18).  Under the first deed of trust,

3    Mortgage Electronic Registration Systems, Inc. ("MERS") was named nominee-beneficiary for

4    Countrywide.  (ECF No. 46-1 at 2–18).

5    On June 29, 2010, Hampton & Hampton ("H&H"), as the HOA's authorized trustee,

6    recorded a notice of delinquent assessment lien on behalf of the HOA.  (ECF No. 46-1 at 23–24).

7    The notice asserted that the borrowers owed $1,256.00 in fees.  (ECF No. 46-1 at 23–24).  On

8    January 29, 2013, H&H mailed (by certified mail, return receipt requested) a notice of delinquent

9    assessment lien to the borrowers.  (ECF No. 44-1 at 16–25).  The notice asserted that the

10   borrowers owed $2,120.00 in fees.  (ECF No. 44-1 at 16–25).

11   On February 28, 2013, Bank of America, N.A. ("BANA"), successor by merger to BAC

12   Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP ("BAC"), assigned the

13   deed of trust to Nationstar.  (ECF No. 46-1 at 20–21).

14   On March 15, 2013, the HOA recorded a notice of default and election to sell under the

15   HOA lien.  (ECF No. 44-2 at 2–3).  The notice of default asserted that the borrowers owed

16   $2,933.00 in fees.  (ECF No. 44-2 at 2–3).  On March 20, 2013, H&H mailed a copy of the

17   notice of default to the borrowers (by certified mail, return receipt requested) and to the

18   beneficiaries of record, which included MERS and BAC (by first class mail).  (ECF No. 44-2 at

19   5-12).

20   On April 1, 2013, the corporation assignment of deed of trust was recorded, wherein

21   Nationstar obtained all beneficial interest under the deed of trust securing the property from

22   BANA.  (ECF No 46-1 at 20–21).

23   On May 8, 2013, Nationstar recorded a notice of default and election to sell against the

24   property.  (ECF No. 46-1 at 78–83).  The notice of default asserted that the borrowers owed

25   $268,170.37.  (ECF No. 46-1 at 78–83).

26   On August 20, 2013, H&H mailed a notice of trustee's sale to the borrowers (by certified

27   mail, return receipt requested) and to the beneficiaries of record, which included MERS, BAC,

28   and Nationstar.  (ECF No. 44-2 at 14–22).  The notice asserted that the "sale will be made . . . to

**James C. Mahan**
**U.S. District Judge**

1    pay the remaining principal sum due . . . plus fees and costs of the Trustee, to wit: $4,112.00

2    (Accrued interest and additional advances, if any, will increase this figure prior to sale.)."  (ECF

3    No. 44-2 at 14–22).  On August 22, 2013, H&H recorded the notice of trustee's sale.  (ECF No.

4    44-2 at 24–26).

5         On October 9, 2013, H&H held a foreclosure sale, and Borozovsky purchased the

6    property for $5,100.00.  (ECF No. 44-2 at 28–31).  On October 22, 2013, H&H recorded the

7    trustee's deed upon sale.  (ECF No. 44-2 at 28–31).

8         Nationstar filed the original complaint on May 13, 2015, asserting four claims against

9    Berezovsky and the HOA (collectively, "defendants"): (1) declaratory relief/quiet title; (2) unjust

10   enrichment; (3) injunctive relief against Berezovsky; and (4) violation of procedural due process.

11   (ECF No. 1).  Plaintiff contends that the HOA foreclosure sale violated NRS 116.31162(6), that

12   the sale should be set aside as it was commercially unreasonable, and that Nevada's statutory

13   scheme providing superpriority liens to homeowner's associations is violative of procedural due

14   process under the Constitution.  (ECF No. 1).

15        The HOA filed a motion to dismiss on June 17, 2015, seeking dismissal of plaintiff's

16   claims.  (ECF No. 7).  This court dismissed Nationstar's claims for unjust enrichment and

17   violation of procedural due process pursuant to an unopposed motion to dismiss.  (ECF No. 47).

18        On October 2, 2015, Berezovsky filed an answer and verified counterclaim, asserting

19   claims of quiet title and declaratory relief against the borrowers, Nationstar, and Richland

20   Holdings, Inc. d/b/a Acctcorp of Southern Nevada.  (ECF No. 22).

21        In the instant motions, Berezovsky, the HOA, and Nationstar all seek summary judgment

22   declaring the rightful holder of title to the property.

23        Berezovsky and the HOA[1] assert that summary judgment in their favor is proper because

24   the foreclosure sale extinguished Nationstar's deed of trust pursuant to NRS 116.3116 and *SFR*

25   *Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) ("*SFR Investments*") and

26   because Nationstar has not met the fraud, unfairness, or oppression requirement to set aside a

27   _____

28       [1]  Berezovsky and the HOA filed separate motions for summary judgment but proffer the
     same arguments.

James C. Mahan
U.S. District Judge

1   foreclosure sale as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*,

2   366 P.3d 1105, 1112 (Nev. 2016) ("*Shadow Wood*").  (ECF Nos. 44, 48).

3   Nationstar contends that summary judgment in its favor is proper because the foreclosure

4   sale was commercially unreasonable, the foreclosure sale is void because the trustee violated

5   NRS 116.3116(6), *SFR Investments* should not be applied retroactively, and the foreclosure sale

6   is invalid because the notice scheme of NRS Chapter 116 is facially unconstitutional.  (ECF No.

7   46).

8   The court will address each in turn.[2]

9   **II.     Legal standard**

10   The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

11   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

12   show that "there is no genuine dispute as to any material fact and the movant is entitled to a

13   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

14   "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

15   323–24 (1986).

16   For purposes of summary judgment, disputed factual issues should be construed in favor

17   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

18   entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts

19   showing that there is a genuine issue for trial."  *Id.*

20   In determining summary judgment, a court applies a burden-shifting analysis.  The moving

21   party must first satisfy its initial burden.  "When the party moving for summary judgment would

22   bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

23   directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

24

25   [2] As an initial matter, the court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 46-1 at 2–18); notice of delinquent assessment (ECF No. 46-1 at 23–24); notice of default and election to sell (ECF No. 44-2 at 2–3); corporate assignment of deed of trust (ECF No. 46-1 at 20–21); notice of trustee's sale (ECF No. 44-2 at 24–26); and trustee's deed upon sale (ECF No. 44-2 at 28–31).  *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

26

27

28

**James C. Mahan**
**U.S. District Judge**

the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). Nonmovant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

James C. Mahan
U.S. District Judge

- 5 -

1    merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at

2    249–50.

3    **III.    Discussion**

4          Under Nevada law, "[a]n action may be brought by any person against another who claims

5    an estate or interest in real property, adverse to the person bringing the action for the purpose of

6    determining such adverse claim."  Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require

7    any particular elements, but each party must plead and prove his or her own claim to the property

8    in question and a plaintiff's right to relief therefore depends on superiority of title."  *Chapman v.*

9    *Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation

10   marks omitted).  Therefore, for claimant to succeed on its quiet title action, it needs to show that

11   its claim to the property is superior to all others.  *See also Breliant v. Preferred Equities Corp.*,

12   918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff

13   to prove good title in himself.").

14         **A.  Nev. Rev. Stat. § 116.3116[3]**

15         Section 116.3116(1) of the Nevada Revised Statutes gives a HOA a lien on its

16   homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives

17   priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as

18   "[a] first security interest on the unit recorded before the date on which the assessment sought to

19   be enforced became delinquent."  Nev. Rev. Stat. § 116.3116(2)(b).

20         The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first

21   security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR Investments*, the Nevada Supreme

22   Court provided the following explanation:

23         As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces,
24         a superpriority piece and a subpriority piece.  The superpriority piece, consisting of

25         [3]  The 2015 Legislature substantially revised Chapter 116.  2015 Nev. Stat., ch. 266.
26   Notably, all of the events that give rise to this litigation occurred prior to October 1, 2013, except
     the foreclosure sale, which occurred on October 8, 2013.  Because Chapter 116 operates by
27   allowing a foreclosure sale only after specific conditions are met, the court must look at the statutes
     in effect on the day of the sale: October 8, 2013.  *See* Nev. Rev. Stat. § 116.31162 (providing that
28   the association may foreclose its lien by sale after all of the following occur).  As such, the
     references in this order to statutes codified in Chapter 116 are to the statutes in effect on that date
     unless otherwise noted.

**James C. Mahan**
**U.S. District Judge**

the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d at 411.

Chapter 116 of the Nevada Revised Statutes permits a HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

The holder of a first deed of trust may pay off the superpriority interest to keep its interest from being extinguished upon foreclosure of an HOA superpriority lien. *See SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

### 1.  *Foreclosure deed recitals*

Defendants assert that they have met their burden to show good title in Berezovsky because the foreclosure sale complied with NRS 116.3116 and *SFR Investments*. (ECF Nos. 44 at 6–8; 48 at 7–8). Defendants argue that the recorded foreclosure deed provides conclusive effect regarding the statutory prerequisites to a valid HOA lien foreclosure sale. (ECF Nos. 44 at 8–10; 48 at 12). Thus, as defendants maintain, the foreclosure sale extinguished Nationstar's deed of trust as a matter of law. (ECF Nos. 44 at 8–10; 48 at 12).

In response, Nationstar argues that defendants' reliance on the foreclosure deed's recitals to prove—as a matter of law—that the foreclosure sale quiets title, is contrary to the court's holding in *Shadow Wood*. (ECF No. 55 at 7–8). Nationstar claims that the foreclosure deed's recitals, as held in *Shadow Wood*, are conclusive proof only as to default, notice, and publication of the notice of sale; and are not conclusive as to commercial reasonableness. (ECF No. 55 at 8).

James C. Mahan
U.S. District Judge

- 7 -

The court agrees with Nationstar's argument.  NRS 116.31166(1) provides:

The recitals in a deed made pursuant to NRS 116.31164 of:
> (a) Default, the mailing of notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale,
Are conclusive proof of the matters recited.

Nev. Rev. Stat. § 116.31166(1).

NRS 116.31166's enactment[] did not eliminate the equitable authority of the courts to consider quiet title actions when an HOA's foreclosure deed contains conclusive recitals.  We therefore reject [the] contention that NRS 116.31166 defeats, as a matter of law, [an] action to set aside the trustee's deed and to quiet title in itself.

*Shadow Wood*, 366 P.3d at 1112.

Here, defendants have provided the recorded trustee's deed upon sale (ECF Nos. 44-2 at 28–31; 48-9 at 2–5), as well as the recorded notice of delinquent assessment (ECF No. 48-4 at 2–3), the recorded notice of default and election to sell (ECF Nos. 44-2 at 2–3; 48-5 at 2–3), and the recorded notice of trustee's sale (ECF Nos. 44-2 at 24–24; 48-7 at 2–4).  Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with the default, notice, publication of the notice of default, and timing statutory prerequisites of a valid foreclosure provided under NRS 116.31162 through NRS 116.31164.

In light of the foregoing, the court will grant defendants' motions for summary judgment as they relate to the foreclosure sale's compliance with the statutory prerequisites to the extent set forth in NRS 116.31166.  Importantly, while NRS 116.31166 accords certain deed recitals conclusive effect, it does not conclusively, as a matter of law, entitle a claimant to success on its quiet title claim.  *Shadow Wood*, 336 P.3d at 1112.

### 2.  *NRS 116.31162(6)*

Though the foreclosure deed recitals are conclusive as to the limited matters mentioned above, NRS 116.31162(6)'s prerequisites fall outside the scope of those recitals.  Nationstar disputes the validity of the foreclosure sale, claiming that the sale took place despite Nationstar's recorded notice of default and without a mediation certificate—contrary to NRS 116.31162(6). (ECF No. 46 at 6–7).  Nationstar asserts that the notice of default it recorded on May 8, 2013 (ECF

1   No. 46-1 at 78–83), is conclusive that the foreclosure sale was not properly conducted and is void.

2   (ECF No. 46 at 6–7).

3          In response, the HOA argues that the codified version of Assembly Bill 273 omits the

4   relevant provision that applied NRS 116.31162(6) to "trust agreements for which a notice of

5   default and election to sell is recorded on or after October 1, 2013." (ECF No. 53 at 9–10).

6   Particularly, the HOA asserts that Nationstar failed to record a notice of default on or after October

7   1, 2013, rendering NRS 116.31162(6) inapplicable. (ECF No. 53 at 9–10).

8          The court agrees. Under Nevada law, any discrepancies between the Statutes of Nevada

9   and the Nevada Revised Statutes that the legislative counsel was not authorized to make are

10  resolved in favor of the language contained in the former. *See* Nev. Rev. Stat § 220.170(3). The

11  difference between the two here is the language that this act only applies "with respect to trust

12  agreements for which a notice of default and election to sell is recorded on or after October 1,

13  2013." *See* 2013 Nev. Stat. 3484. Nevada law does not authorize the legislative counsel to "alter

14  the sense, meaning or effect of any legislative act." Nev. Rev. Stat. § 220.120.

15         Omission of this language would change the effect of the legislative act. By removing the

16  effective date for notices of default, the Nevada Revised Statute greatly enhances whom the

17  legislature intended to protect when it enacted Nevada Statute 3484. The legislative counsel edited

18  beyond its authority, such that the Nevada Statute must control.

19         Moreover, defendants are correct in their assertion that a genuine dispute of material fact

20  still exists as to whether the property was "owner-occupied housing" at the time of the foreclosure

21  sale. (ECF No. 53 at 11). Nationstar has provided no evidence supporting this element of NRS

22  116.31162(6)'s defense to a foreclosure sale.

23         Because Nationstar did not record a notice of default against the property after October 1,

24  2013, the court finds NRS 116.31162(6)'s defense is inapplicable to Nationstar in this case.

25  **B. Commercial Unreasonableness**

26         Nationstar asserts that the foreclosure sale is void because the purchase price of $5,100.00

27  in light of the $126,500.00 property appraisal value is grossly inadequate as the purchase price is

28  4% of the property's value. (ECF No. 46 at 5–6).

**James C. Mahan**
**U.S. District Judge**

1    In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be

2    set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed

3    where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression."  366 P.3d

4    at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853 (D. Nev.

5    2016).   In other words, "demonstrating that an association sold a property at its foreclosure sale

6    for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud,

7    unfairness, or oppression."  *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528 (Nev. 1982).

8                            *1.  Inadequate Price*

9    Nationstar argues that the purchase price of $5,100.00 in light of the $126,500.00 property

10   appraisal value is grossly inadequate as the purchase price is 4% of the property's value.  (ECF

11   No. 46 at 5–6).  As support, Nationstar provides the appraisal report of Matthew Lubawy, wherein

12   Lubawy concluded that on the date of the foreclosure sale, October 8, 2013, the property's value

13   was $126,000.00.  (ECF No. 46-1 at 44–76).

14   The general rule for gross inadequacy of sales price requires 20% of fair market value.  *See*

15   *Shadow Wood*, 366 P.3d at 1112.  In *Shadow Wood*, the court remanded for further fact-finding,

16   but noted that in the past it had declined to set aside sales for as low as 28.5% and that the apparent

17   23% ratio in the case before it was not "obviously" inadequate.  *See id.* (citing *Golden v. Tomiyasu*,

18   387 P.2d 989, 993 (Nev. 1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)).

19   Here, Nationstar has satisfied its initial burden as to gross inadequacy by setting forth

20   evidence that the property was purchased at the foreclosure sale for 4% of its market value.  (*See*

21   deed of trust, ECF No. 46-1 at 2–18 (securing $230,800.00); Lubawy report, ECF No. 46-1 at 44–

22   76 (estimating $126,000.00 value on date of foreclosure sale); foreclosure deed, ECF No. 46-1 at

23   33–36 (indicating sale for $5,100.00)); *see also Nationstar Mortg., LLC*, 184 F. Supp. 3d at 857

24   (finding sale price of less than 5% of the secured amount sufficient to satisfy initial burden of

25   showing gross inadequacy).  Even assuming that the fair market value was only half of the

26   appraised amount (*i.e.*, $63,000.00), the sale price would still be only 8%, which is less than half

27   the amount generally required for gross inadequacy.

28

James C. Mahan
U.S. District Judge

1    Defendants do not dispute $126,000.00 being a fair market value; rather defendants take

2    issue with the method by which that value was computed.  (ECF No. 53 at 3).  While defendants

3    assert that Nationstar's appraiser failed to consider relevant factors, they fail to produce any

4    evidence to support a showing of a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Nationstar*

5    *Mortg., LLC*, 184 F. Supp. 3d at 857 (denying summary judgment on gross inadequacy because

6    opposing expert report concluded fair market value of $9,000.00 based on similar homes sold for

7    similar amounts at similar HOA sales; finding reasonable jury could accept this theory over the

8    traditional sales of comparable properties).

9    In addition, defendants argue that Lubawy's expert report is inadmissible as it lacks

10    foundation and that it cannot be used to support a motion for summary judgment.  (ECF No. 53 at

11    3).  The court disagrees.

12    Rule 56(c)(2) controls objections of facts not supported by admissible evidence and states

13    that a "party may object that the material cited . . . cannot be presented in a form that would be

14    admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  The form of the evidence is not the focus of

15    analysis for the purposes of summary judgment.  *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th

16    Cir. 2003). "We instead focus on the admissibility of [the evidence's] contents."  *Id.* (finding that

17    a diary, though hearsay, could be admitted in an alternative form at trial and therefore be used as

18    evidence on summary judgment).

19    While Nationstar has met its initial burden of showing a grossly inadequate sale price, it

20    must also show fraud, unfairness, or oppression.

21    ### *2.   Fraud, Unfairness, or Oppression*

22    On a motion for summary judgment, Nationstar must also demonstrate sufficient grounds

23    to justify setting aside the foreclosure sale.  In other words, inadequate price is not enough to

24    warrant setting aside a foreclosure sale; there must also be a showing of fraud, unfairness, or

25    oppression.  *See Shadow Wood*, 366 P.3d at 1112; *Long*, 639 P.2d at 530.

26    Nationstar attempts to claim that a grossly inadequate price alone is enough to show fraud,

27    unfairness, or oppression.  (ECF No. 46 at 5).  Nationstar relies on its assertion that the Nevada

28    Supreme Court adopted the Restatement in *Shadow Wood* to prove it has met its burden at trial.

**James C. Mahan**
**U.S. District Judge**

1   (ECF No. 56 at 6–7).  In support, Nationstar quotes a parenthetical explanation, which quotes the

2   Restatement, and attempts to pass it off as the court's holding in *Shadow Wood*.

3        The *Shadow Wood* court makes no such holding.  (ECF No. 46 at 5).  Furthermore, no

4   language exists in *Shadow Wood* that exhibits the Nevada Supreme Court's intention to adopt the

5   Restatement.  *Compare Shadow Wood*, 366 P.3d at 1112 (citing the Restatement as secondary

6   authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James*

7   *Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the

8   Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153

9   (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and

10  Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev.

11  2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).

12       Because Nevada courts have not adopted the relevant section(s) of the Restatement at issue

13  here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a

14  grossly inadequate sale price to set aside a foreclosure sale, controls.  *See* 639 P.2d at 530.

15       Nationstar also argues that the timing of the foreclosure sale as it relates to the effective

16  date of NRS 116.31162(6) satisfies unfairness under the *Long* test.  (ECF No. 55 at 12).  As

17  previously concluded, Nevada law clearly defines what law controls in the circumstance of a

18  discrepancy.  *See* Nev. Rev. Stat § 220.170(3); Nev. Rev. Stat § 220.120.  That Nationstar failed

19  to timely identify this discrepancy is unfortunate, but it is not conclusive as to unfairness.  Though

20  it is true that Nationstar had only eight (8) days after the effective date of the amended NRS

21  116.31162 to record a new notice of default, it had at least 111 days to understand the change in

22  law and prepare accordingly.  *See* 2013 Nev. Stat. 3484 (approved by the governor on June 12,

23  2013).  The evidence presented creates a genuine dispute of material fact, and one that a reasonable

24  jury could find constitutes unfairness.

25       Moreover, when sitting in equity, "courts must consider the entirety of the circumstances .

26  . . .  This includes considering the status and actions of all parties involved including whether an

27  innocent party may be harmed by granting the desired relief."  *Shadow Wood*, 366 P.3d at 1114

28  (citation omitted).

James C. Mahan
U.S. District Judge

**3. *Bona Fide Purchaser***

Nationstar contends that Berezovsky is not a *bona fide* purchaser as he had notice of Nationstar's competing interest at the time of the foreclosure sale. (ECF No. 55 at 12–19). Defendants argue that a recorded deed of trust is not enough to establish notice as to a competing interest, but evidence that Berezovsky had actual notice of a dispute between the HOA and Nationstar is required. (ECF No. 61 at 10–12).

A subsequent purchaser is *bona fide* if it takes the property (1) for value, and (2) without notice of a competing interest. *Id.* at 1115 (citing *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947)). Moreover, that the competing interest could bring an equitable claim to challenge the foreclosure sale is not enough in itself to demonstrate notice of any potential future dispute as to title. *Id.* at 1116.

Defendants are correct: the deed of trust alone is not enough to establish *bona fide* purchaser status. *See id.* However, Nationstar presented evidence of a previously recorded notice of default against the property. (ECF No. 46-1 at 78–83) That Berezovsky sought, and received, information about the property from the Clark County records adequately establishes notice of the potentially competing default. (ECF No. 55-4 at 11–14).

Though the recorded deed of trust alone is not enough to question Berezovsky's status as a *bona fide* purchaser, when combined with Nationstar's notice of default and Berezvosky's inquiry into the property's recorded history, a genuine dispute of material fact exists.

Thus, the court finds genuine disputes of material fact exist, and will deny defendants' motions as they relate to commercial unreasonableness.

**C. Retroactive application of *SFR Investments***

Nationstar posits that the court should not apply *SFR Investments* retroactively to extinguish its deed of trust. (ECF No. 46 at 11–13).

The retroactivity issue has been certified to the Nevada Supreme Court in other district of Nevada cases. *See, e.g.*, *Christiana Trust v. K&P Homes*, No. 2:15-cv-1534, 2016 WL 923091, at *2 (D. Nev. Mar. 9, 2013). Therefore, the court will not issue a ruling on the issue of retroactivity at this time. If this case should conclude in defendants' favor, the court will then determine

James C. Mahan
U.S. District Judge

1    whether to stay judgment during the pendency of the Nevada Supreme Court's resolution of the

2    issue.  Accordingly, the court will deny defendants' motion for summary judgment as to this issue.

3            **D.  Due Process**

4            In its motion, Nationstar asserts that the foreclosure sale is invalid as the notice scheme of

5    NRS Chapter 116 is facially unconstitutional and in violation of due process.  (ECF No. 46 at 7–

6    11).

7            Defendants argue that the foreclosure sale could not be unconstitutional because it lacked

8    state action.  (ECF No. 53 at 6–7).  Defendants also contend that Nevada has previously rejected

9    arguments concerning the constitutionality of Chapter 116's "opt-in" notice scheme.  (ECF No. 53

10   at 8–9).

11           The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a

12   HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively

13   requested notice, facially violated mortgage lenders' constitutional due process rights.  *Bourne*

14   *Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1157–58 (9th Cir. 2016).  The

15   *Bourne* court also held that the Nevada legislature's enactment of Chapter 116 constituted state

16   action.  *Id.* at 1154.  Therefore, *Bourne Valley* clearly rejects both of defendants' arguments.  *See*

17   *id*.

18           Notwithstanding the fact that this court has already dismissed Nationstar's quiet title claim

19   against the HOA "insofar as it relies on a due process theory" (ECF No. 47 at 6–7), Nationstar's

20   claim similarly fails.  The facially unconstitutional provision, as identified in *Bourne Valley*, exists

21   in NRS 116.31163(2).  *See id.* at 1158.  At issue is the "opt-in" provision that unconstitutionally

22   shifts the notice burden to holders of the property interest at risk.  Due process requires "notice

23   reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the

24   action and afford them an opportunity to present their objections."  *Id.* at 1158 (quoting *Mennonite*

25   *Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983)) (internal quotation marks omitted).

26           Nationstar has not suffered an injury related to the unconstitutional provision in NRS

27   116.31163(2).  To raise a question of constitutionality, the party must have sufficient Article III

28   standing, including, *inter alia*, a "personal injury fairly traceable to the . . . allegedly unlawful

**James C. Mahan**
**U.S. District Judge**

conduct." *Raines v. Byrd*, 521 U.S. 811, 818–19 (1997) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (emphasis omitted).

Here, adequate notice was given to the interested parties prior to extinguishing a property right.  Nationstar recorded its interest in the property on April 1, 2013.  (ECF No. 46-1 at 20–21).  Prior to this recording, on March 20, 2013, the HOA notified interested parties of the potential foreclosure by sending them a notice of default and election to sell.  (ECF No. 44-2 at 5–12).  Nationstar was not entitled to this notification because, on March 20, 2013, Nationstar had not yet recorded its property interest.

After Nationstar recorded its interest in the property, it received adequate notice to satisfy due process.  On August 20, 2013, the HOA again notified interested parties—this time including Nationstar—by sending them a notice of trustee's sale.  (ECF No. 44-2 at 14–22).  The notice of trustee's sale included (1) the name, address, and telephone number of the trustee conducting the sale, (2) the property at issue, (3) the time, date, and location that the sale will occur, and (4) the amount owed to satisfy the lien.  (ECF No. 46-1 at 29–31).  Whereas notice by mail to ensure actual notice is the minimum constitutional requirement, the notice here specifically laid out procedures to prevent extinguishment of the property interest.  *See Mennonite*, 462 U.S. at 800.

As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put Nationstar on notice that its interest was subject to pendency of action and offered all of the required information.

**IV.   Conclusion**

Based on the foregoing, the court grants the HOA's motion for summary as it relates to the foreclosure sale's compliance with the statutory prerequisites to the extent set forth in NRS 116.31166.  Because the record prevents a finding that the foreclosure sale extinguished Nationstar's deed of trust as a matter of law under NRS 116.3116, *SFR Investments*, and *Shadow Wood*, the court denies summary judgment as to the remaining issues.

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

- 15 -

1    Accordingly,

2        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion for

3    summary judgment (ECF No. 48) be, and the same hereby is, GRANTED IN PART and

4    DENIED IN PART, consistent with the foregoing.

5        IT IS FURTHER ORDERED that Berezovsky's motion for summary judgment (ECF No.

6    44) be, and the same hereby is, DENIED.

7        IT IS FURTHER ORDERED that Nationstar's motion for summary judgment (ECF No.

8    46) be, and the same hereby is, DENIED.

9        IT IS FURTHER ORDERED that the HOA's amended stipulation for extension of time

10   (ECF No. 43) be, and the same hereby is, DENIED as moot.

11       DATED February 13, 2017.

12

13       UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge                                      - 16 -